UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| LIBERTY UNIVERSITY, Inc., a Virginia Nonprofit corporation, MARTHA A. NEAL, MICHELE G. WADDELL, DAVID STEIN, M.D., PAUSANIAS ALEXANDER, MARY T. BENDORF, JOANNE V. MERRILL, DELEGATE KATHY BYRON, and JEFF HELGESON | ) ) ) ) ) ) ) ) | |
| Plaintiffs | ) ) | Case No.: _____ |
| v. | ) | COMPLAINT |
| TIMOTHY GEITHNER, Secretary of the Treasury of the United States, *in his official capacity,* KATHLEEN SEBELIUS, Secretary of the United States Department of Health and Human Serviices, in *her official capacity,* HILDA L. SOLIS,  Secretary of the United States Department of Labor, *in her official capacity,* and ERIC HOLDER, Attorney General of the United States, *in his official capacity,* | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants | ) | |

## COMPLAINT FOR DECLARATORY, PRELIMINARY
## AND PERMANENT INJUNCTIVE RELIEF

COME NOW the Plaintiffs, LIBERTY UNIVERSITY, INC., MARTHA A. NEAL, MICHELE G. WADDELL, DAVID STEIN, M.D., PAUSANIAS ALEXANDER, MARY T. BENDORF, JOANNE V. MERRILLL, DELEGATE KATHY BYRON and JEFF HELGESON, by and through their undersigned counsel, and respectfully request this Court to issue a Declaratory Judgment and Preliminary and Permanent Injunctive Relief. In support thereof, Plaintiffs show unto the Court as follows:

Complaint for Declaratory, Preliminary and Permanent Injunctive Relief - Page 1

1.      This is a civil action whereby Plaintiffs seek Declaratory Judgment and Preliminary and Permanent Injunctive Relief enjoining Defendants, Timothy Geithner, in his official capacity as the Secretary of the Treasury, Kathleen Sebelius in her official capacity as Secretary of the Department of Health and Human Services, Hilda L. Solis, in her official capacity as Secretary of the Department of Labor, and Eric Holder in his official capacity as Attorney General of the United States (hereafter collectively referred to as "Defendants"), their agents, servants and employees and those acting in active concert and with actual notice thereof, from: implementing and enforcing the provisions of the Patient Protection and Affordable Care Act  of 2009 (hereafter the "Act"), including mandatory health insurance for individuals, mandatory provision of health insurance by employers, payment of penalties for failure to obtain and maintain health insurance, insurance exchange policies that are otherwise suitable but for requiring payment for elective abortion coverage, and other provisions as set forth herein which violate the Plaintiffs' rights to Free Exercise of Religion, Free Association, and Equal Protection, guaranteed under the First, Fifth and Tenth Amendments to the United States Constitution and from violating the Establishment Clause of the First Amendment to the United States Constitution and Article I  of the United States Constitution, as well as the Religious Freedom Restoration Act, the Congressional Budget Act of 1974, and Section 38.2-3430.1:1 of the Code of Virginia..

2.      Plaintiffs also pray for Declaratory Judgment to determine that certain provisions of the Act, requiring mandated insurance coverage by employers, fines, and allowing religious exemptions for only members of recognized religious denominations, are unconstitutional as a violation of the the First Amendment to the United States Constitution.

3.      An actual controversy exists between the parties involving substantial constitutional issues, in that provisions of the Healthcare Act are unconstitutional on their face, violate

Plaintiffs' rights to equal protection and free exercise of religion guaranteed under the First Amendment to the United States Constitution, and violate the Establishment Clause of the First Amendment to the United States Constitution.

## JURISDICTION AND VENUE

4.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 1346, 2201, 2202, and 2412, and 42 U.S.C. § 2000bb et. seq.

5.   This Court is authorized to grant Plaintiffs' Prayer for Relief and to award costs, including a reasonable attorney's fee, under 28 U.S.C. § 2412 and 42 U.S.C. § 2000bb-1.

6.   This Court is authorized to grant Declaratory Relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 (1988), implemented through Rule 57 of the Federal Rules of Civil Procedure, and to issue the Preliminary and Permanent Injunctive Relief requested by Plaintiffs under Rule 65 of the Federal Rules of Civil Procedure.

7.   Venue is proper under 28 U.S.C. § 1391.  Each and all of the acts alleged herein were done by Defendants, and each of them, not as individuals, but under the color and pretense of statutes, ordinances, regulations, customs, and uses of the United States of America..

## PARTIES

8.   Plaintiff Liberty University, Inc., is a not-for-profit corporation organized and existing under the laws of the Commonwealth of Virginia, which operates a private Christian university principally located in the city of Lynchburg, Virginia.

9.   Plaintiff Martha A. Neal is a natural born person and citizen of the state of Georgia.  She is more than 26 years of age and not yet eligible for Medicare.

10.    Plaintiff Michele G. Waddell is a natural born person and citizen of the state of Florida and a resident of the Commonwealth of Virginia. She is more than 26 years of age and not yet eligible for Medicare.

11.    Plaintiff Dr. David Stein is a natural born person and citizen of the state of Wisconsin. He is a licensed and practicing medical doctor.

12.    Plaintiff Pausanias Alexander is a natural born person and citizen of the Commonwealth of Virginia. He is more than 26 years of age and not yet eligible for Medicare.

13.    Plaintiff Mary T. Bendorf is a natural born person and citizen of the state of Wisconsin. She is more than 26 years of age and not yet eligible for Medicare.

14.    Plaintiff Joanne V. Merrill is a natural born person and citizen of the state of Florida. She is more than 26 years of age and not yet eligible for Medicare.

15.    Plaintiff Kathy Byron is a delegate to the Virginia House of Delegates in good standing. She objects to the Act and its purported mandate to require states to perform certain actions implementing the Act and dramatically altering the balance of powers between the federal and state governments.

16.    Plaintiff Jeff Helgeson is a natural born person and citizen of the Commonwealth of Virginia who lives in Lynchburg, Virginia  He has been elected to City Council of the City of Lynchburg, Virginia, to the Third Ward District. He objects to the Act and the injury it will do to the employers and citizens of his City.

17.    Defendant Timothy Geithner is the Secretary of the Treasury for the United States of America, responsible for formulating economic and tax policy, managing the public debt, and overseeing the collection of taxes and enforcement of the tax laws of this country, including the tax laws enacted and amended  by the Act.

Complaint for Declaratory, Preliminary and Permanent Injunctive Relief - Page 4

18.    Defendant Kathleen Sebelius is the Secretary of the Department of Health and Human Services of the United States of America, responsible for the operation of the largest civilian department in the federal government and the administration of federal health programs, including Medicare and Medicaid and health insurance programs established under the Patient Protection and Affordable Care Act of 2009.

19.    Defendant Hilda L. Solis is the Secretary of Labor for the United States of America and is responsible for overseeing government programs, such as the Occupational Health and Safety Administration, analyzing and tracking employment data, and recommending and enforcing labor laws, including the laws enacted and amended in the Patient Protection and Affordable Care Act of 2009.

20.    Defendant Eric Holder is the Attorney General of the United States of America who heads the United States Department of Justice and is the chief law enforcement officer of the United States responsible for enforcing the laws of the United States including the laws enacted and amended in the Act.

21.    Each of the Defendants is sued in his or her official capacity only.

## STATEMENT OF FACTS

22.    On March 23, 2010, the President of the United States signed H. R. 3590, the Patient Protection and Affordable Care Act of 2009, into law.

23.    Plaintiff Liberty University is a private Christian university founded in Lynchburg, Virginia in 1971 by Dr. Jerry Falwell.

24.    Dr. Jerry L. Falwell, the late pastor of Thomas Road Baptist Church, founded the University as an outgrowth ministry of the local church.

25.    Jerry Falwell Jr. is the son of Dr. Jerry Falwell and is the Chancellor and CEO of Liberty

University.

26.    Liberty University, originally known as Lynchburg Baptist College and subsequently Liberty Baptist College, used the church's educational facilities to offer courses until moving to its present location between 1977 and 1981.

27.    The Commonwealth of Virginia granted the University permission to award degrees in 1974. The Commission on Colleges of the Southern Association of Colleges and Schools (SACS) granted the University candidate status for accreditation in June 1977 and accreditation in December 1980. In 1986, 1996, and 2006, SACS reaffirmed the University's accreditation.

28.    Liberty University has eleven (11) colleges, including the School of Aeronautics, Center for Academic Support and Advising Services, College of Arts and Sciences, Helms School of Government, School of Business, School of Communication, School of Education, School of Engineering and Computational Sciences, School of Religion, School of Law, and Liberty Baptist Theological Seminary and Graduate School.

29.    Liberty University enrolls approximately 12,000 residential students and more than 40,000 students in its online program throughout the world.

30.    Liberty University employs approximately 466 full-time faculty, 1,362 adjunct faculty, 2,072 staff members and 1,242 students who are located in Lynchburg, Virginia and other states throughout the United States. Liberty University is the largest employer in Lynchburg, Virginia.

31.    Liberty University is self-insured and makes available health savings accounts, private insurance policies and other healthcare reimbursement options to qualified employees under a salary reduction program. Currently, 1,879 employees have chosen to participate in health insurance coverage, which covers 4,340 lives.

32.    Liberty University does not mandate that its qualified employees accept healthcare coverage and some employees make personal decisions to not obtain healthcare coverage through a payroll deduction.

33.    Liberty University ensures that the health care reimbursement options made available to its employees are consistent with the University's core Christian values, including the sanctity of human life from conception to natural death.

34.    Liberty University does not cover abortion under its health insurance coverage.

35.    Abortion is contrary to the Christian mission of Liberty University.

36.    Plaintiff Martha A. Neal has elected to purchase health insurance coverage that provides the care she desires at an expense in keeping with her financial situation. Under the Act, she will be required to purchase coverage that conforms to government-imposed definitions of "minimum essential coverage," regardless of whether it is coverage that she needs, deisires or can afford. The individual mandate in the Act will create a financial hardship for Ms. Neal in that she will have to either pay for health insurance coverage that is not necessary or desirable or face significant penalties as set forth in the Act.

37.    Plaintiff Michele G. Waddell is generally healthy, has not elected to purchase health insurance coverage and does not want to purchase health insurance coverage. She is a student and not employed. She pays for healthcare expenses as she needs and uses healthcare services. Under the Act, she will be required to purchase certain health insurance coverage that conforms to government-imposed definitions of "minimum essential coverage," regardless of whether it is coverage that she needs, deisires or can afford. She arranged her affairs such that it will be a financial hardship for her in that she will have to either pay for health insurance coverage that is not necessary or desirable or face significant penalties as set forth in the Act.

38.     Plaintiff Dr. David Stein is a physician practicing in Milwaukee, Wisconsin.and is board certified by the American Board of Pain Medicine and the American Board of Anesthesiology, which means he has successfully met the highest standards of his profession. Dr. David Stein has a relationship with eighteen (18) insurance plans and six (6) hospital affiliations. Implementation of the Act, together with the layers of bureaucratic regulation, will fundamentally change his practice for the worse and negatively impact his ability to serve his patients.

39.     In September 2009, Investors Business Daily (IBD) reported that 65% of 1,376 physicians surveyed oppose a federal overhaul of the healthcare system, and 45% will consider quitting or retiring early. The IBD reported that 72% of the doctors polled disagreed with the claim that the government can give 47 million additional people better care at a lower cost. Dr. Stein is among the 72% of physicians who disagree with that claim and among the physicians who oppose the Act as antithetical to providing quality care to more patients at a lower cost.

40.     The Secretary of HHS is required under Sec. 1323(b)(1) of the Act to set up a community health insurance option to offer healthcare coverage. Pursuant to Sec. 1323(b)(6)(A), the Secretary will negotiate rates for the reimbursement of healthcare providers for benefits covered under a community health insurance option. These health insurance options will affect medical practice for healthcare providers, including Dr. Stein, and will adversely affect their ability to continue to provide quality medical care for their patients.

41.     Plaintiff Pausanias Alexander is generally healthy and has elected to purchase health insurance coverage that provides the care he desires at an expense in keeping with his financial situation. Under the Act, he will be required to purchase coverage that conforms to government-imposed definitions of "minimum essential coverage," regardless of whether it is coverage that he needs, deisires or can afford. The individual mandate in the Act will create a financial

hardship for Mr. Alexander in that he will have to either pay for health insurance coverage that is not necessary or desirable or face significant penalties as set forth in the Act.

42.    Plaintiff Mary T. Bendorf is generally healthy, has elected not to purchase health insurance coverage and does not want to purchase health insurance coverage. She generally believes in pursuing healthful living through natural alternatives to traditional medicine. Under the Act, she will be required to purchase certain health insurance coverage for traditional medical benefits she does not want and will not use. She will be forced to purchase health insurance or pay penalties for failure to purchase health insurance under the Act.

43.    Plaintiff Joanne V. Merrill has elected not to purchase health insurance coverage and does not want to purchase health insurance coverage. She has done so historically to retain control of her healthcare decisions and ensure her funds are never co-mingled in a way that would advance abortion of any kind. Under the Act, she will be required to purchase certain health insurance coverage. Under the Act, either she will be forced to purchase health insurance or, if she wishes to continue to control her individual health care expenditures by paying as she goes, she will be forced to pay penalties for failure to purchase health insurance.

44.    Plaintiff Kathy Byron is a member of the House of Delegates of the Commonwealth of Virginia, serving the 22nd District. Delegate Byron voted for Bill H.10, which becomes effective July 1, 2010 and amends the Code of Virginia to add section 38.2-3430.1:1:

> § 38.2-3430.1:1. Health insurance coverage not required.
> No resident of this Commonwealth, regardless of whether he has or is eligible for health insurance coverage under any policy or program provided by or through his employer, or a plan sponsored by the Commonwealth or the federal government, shall be required to obtain or maintain a policy of individual insurance coverage. No provision of this title shall render a resident of this Commonwealth liable for any penalty, assessment, fee, or fine as a result of his failure to procure or obtain health insurance coverage. This section shall not apply to individuals voluntarily

applying for coverage under a state-administered program pursuant to Title XIX or Title XXI of the Social Security Act.

45.     The Act violates Virginia law and the constitutional doctrine of separation of powers, as well as the Tenth Amendment to the United States Constitution, as set forth herein, in a manner that violates Delegate Byron's rights as an elected representative of the people of the Commonwealth of Virginia.

46.     Plaintiff Lynchburg City Council Member Jeff Helgeson represents the district where Liberty University is located within the city of Lynchburg, Virginia. Implementation of the Act will have a negative impact on the city of Lynchburg, generally, and his district, in particular. Plaintiff Jeff Helgeson is also self-employed and will be subject to the Act's requirement that he purchase certain health insurance or pay penalties for failure to purchase health insurance under the Act.

47.     The Act amends the Internal Revenue Code of 1986 by adding Section 5000A, which mandates that individuals obtain and maintain "minimum essential healthcare coverage" for themselves and their families (the "individual mandate").

48.     If an individual fails to obtain and maintain minimum essential healthcare coverage as defined in the Act, then he is subject to a penalty, payable as part of his income tax return.

49.     The Act grants Defendant Geithner the power to collect said penalties as part of his oversight of the Internal Revenue Service.

50.     In Section 1501 of the Act, Congress makes findings that the individual mandate is commercial and economic in nature and substantially affects interstate commerce in that it regulates economic and financial decisions about how and when healthcare is paid for and when health insurance is purchased.

51.    In that same section, Congress makes further findings that health insurance is a significant part of the economy, and that pursuant to *United States v. South-Eastern Underwriters Association*, 322 U.S. 533 (1944), insurance is interstate commerce so that the individual mandate can be viewed as part of Congress's power under the Commerce Clause, Article I, Section 8 of the Constitution.

52.    Despite the findings in the Act, the Senate expressed some concerns about whether it had power to adopt the individual mandate under the Commerce Clause, Article I, Section 8 of the Constitution. As a consequence of these concerns, the Senate Finance Committee asked the Congressional Research Service for an opinion on the constitutionality of the individual mandate. The Service replied: "Whether such a requirement would be constitutional under the Commerce Clause is perhaps the most challenging question posed by such a proposal, as it is a novel issue whether Congress may use this Clause to require an individual to purchase a good or a service." Cong. Research Serv. Requiring Individuals to Obtain Health Insurance: A Constitutional Analysis 3 (2009).

53.    As the Congressionl Research Service opinion indicates, Congress's power under the Commerce Clause does not embrace the individual mandate in that the individual mandate is not regulating a commercial transaction between two parties but is imposing upon a party who has chosen not to engage in interstate commerce, such as Plaintiffs Michele Waddell, Mary Bendorf and Joanne Merrill, an obligation to engage in interstate commerce. As such the individual mandate is antithetical to the Commerce Clause's power in that it seeks to regulate inherently noncommercial activity that does not affect interstate commerce and to interfere with the private economic decisions made by Plaintiffs Michele Waddell, Mary Bendorf and Joanne Merrill and other similarly situated individuals.

54.    Internal Revenue Code Section 5000A, added by the Act, exempts from the individual mandate anyone who can satisfactorily establish that he or she satisfies Section 1402(g)(1) of the Internal Revenue Code, which provides exemptions for those who are "a member of a recognized religious sect or division thereof and is an adherent of established tenets or teachings of such sect or division by reason of which he or she is conscientiously opposed to acceptance of the benefits of any private or public insurance which makes payments in the event of death, disability, old-age, or retirement or makes payments toward the cost of, or provides services for, medical care (including the benefits of any insurance system established by the Social Security Act [42 USCS §§ 301 et seq.]) and an adherent of established tenets or teachings of such sect or division as described in such section," provided that "it is the practice, and has been for a period of time which he deems to be substantial, for members of such sect or division thereof to make provision for their dependent members which in his or her judgment is reasonable in view of their general level of living, and such sect or division thereof has been in existence at all times since December 31, 1950."

55.    Plaintiffs Martha A. Neal, Michele G. Waddell, Mary T. Bendorf, Pausanias Alexander Joanne V. Merrill and Jeff Helgeson are Bible-believing Christians but are not members of a religious sect or adherents of established tenets or teachings which are conscientiously opposed to acceptance of the benefits of any private or public insurance, as provided in Section 402(g)(1) of the Internal Revenue Code, and, therefore, would be prohibited from the exemption provided for such religious adherents in the Act.

56.    Internal Revenue Code Section 5000A further exempts individuals who are members of a "healthcare sharing ministry," defined as a 501(c)(3) organization members of which share a common set of ethical or religious beliefs and share medical expenses among members in

accordance with those beliefs, retain membership even after developing a medical condition, and which have been in existence at all times since December 31, 1999.

57.     Liberty University is a 501(c)(3) organization, whose employees and trustees share a common set of ethical or religious beliefs. However, Liberty University is precluded from the "healthcare sharing ministry" exemption provided under the Act because it did not institute the sharing of medical expenses as of December 31, 1999. The arbitrary inclusion of the date December 31, 1999 unreasonably precludes Liberty University from forming a healthcare sharing ministry to provide health coverage for its employees in a manner that does not violate their sincerely held religious beliefs in the way that the coverage required under the Act does, as set forth herein.

58.     Part II of Subtitle F of the Act amends the Fair Labor Standards Act of 1938 by inserting Section 18A, which requires that an employer with more than 200 full-time employees which offers one or more health benefits plans shall automatically enroll new full-time employees in one of the plans offered and continue the enrollment of current employees in a health benefits plan offered through the employer, subject to the employee being provided an opportunity to opt out of coverage. This provision will add significant cost to Liberty University and will substantially burden and affect its mission.

59.     The Act also amends Chapter 43 of the Internal Revenue Code of 1986 to add Section 4980H, "Shared Responsibility of Employers Regarding Health Coverage," which imposes upon employers with more than 200 employees a penalty of $400 per full-time employee for any waiting period for health coverage that exceeds 30 days but does not exceed 60 days and $600 per full-time employee for any waiting period for health coverage that exceeds 60 days. This

provision will add significant cost to Liberty University and will substantially burden and affect its mission.

60.    Liberty University requires that full-time employees be employed for 90 days before being eligible for health coverage, which will make Liberty University liable for a penalty of $600 per full-time employee. This provision will add significant cost to Liberty University and will substantially burden and affect its mission.

61.    The Act creates a new program under which the Federal Office of Personnel Management (OPM) would administer multistate insurance plans, sometimes called exchanges, where persons who cannot otherwise obtain the mandated insurance coverage (i.e. not available through an employer plan, Medicare, Medicaid, etc.) must obtain the mandated insurance.

62.    Such exchanges are made up of private insurance plans with certain minimum benefits specified by the OPM.

63.    The Act does not require that every private health insurance plan offered through the exchanges with insurance coverage for elective abortions have an otherwise equivalent plan that does not cover abortions that are not necessary to save the life of the pregnant mother.

64.    Accordingly, there will be an array of qualified health insurance plans offered through the exchanges, only one of which is required to have any limitations of abortion, and which plan may or may not otherwise meet the needs of Plaintiffs Martha A. Neal, Michele G. Waddell, Mary T. Bendorf, Pausanias Alexander and Joanne V. Merrill.

65.    The Act prevents the qualified health insurance plans offered through the exchanges from advertising whether the plans provide coverage for abortions and requires insurers offering such plans to provide plan participants information about abortion coverage only in the summary of benefits at the time of enrollment (thus requiring that the enrolling participants either carefully

read all the insurance benefits information or enroll while ignorant of their new connection with abortion and those who support abortion).

66.     Collectively, the provisions of the Act summarized in the preceding paragraphs are referred to as "The Act's Private Exchange Provisions."

67.     Plaintiffs Martha A. Neal, Michele G. Waddell, Mary T. Bendorf, Pausanias Alexander and Joanne V. Merrill. are Bible-believing Christians who believe that they should live out their sincerely held religious beliefs in everyday life, including the various choices they make in ordering their daily affairs.

68.     Plaintiffs Martha A. Neal, Michele G. Waddell, Mary T. Bendorf, Pausanias Alexander and Joanne V. Merrill. have sincerely held religious beliefs that abortions, except where necessary to save the life of the pregnant mother, are murder and morally repugnant.

69.     Plaintiffs Martha A. Neal, Michele G. Waddell, Mary T. Bendorf, Pausanias Alexander and Joanne V. Merrill. have sincerely held religious beliefs that they should play no part in such abortions, including no part in facilitating, subsidizing, easing, funding, or supporting such abortions since to do so is evil and morally repugnant complicity.

70.     Plaintiffs Martha A. Neal, Michele G. Waddell, Mary T. Bendorf, Pausanias Alexander and Joanne V. Merrill. have sincerely held religious beliefs that they should not formally associate with or in any way yoke themselves with those who would facilitate, subsidize, ease, fund or support such abortions.

71.     Plaintiff Liberty University has a sincerely held religious belief that it should play no part in abortions, including no part in facilitating, subsidizing, easing, funding, or supporting abortions since to do so is evil and morally repugnant complicity.

72.    Plaintiff Liberty University has a sincerely held religious belief that it should not formally associate with or in any way be yoked with those who would facilitate, subsidize, ease, fund or support abortions.

73.    Under the Act Plaintiff Liberty University faces possible penalities of up to $600 per employee which could be used to fund or support abortions in violation of its sincerely held religious beliefs.

74.    The Congressional Budget Act of 1974, Sec. 310(g), 2 U.S.C. § 641(g) (1997), states, "Notwithstanding any other provision of law, it shall not be in order in the Senate or the House of Representatives to consider any reconciliation bill or reconciliation resolution reported pursuant to a concurrent resolution on the budget agreed to under section 632 or 635 of this title, or any amendment thereto or conference report thereon, that contains recommendations with respect to the old-age, survivors, and disability insurance program established under Title II of the Social Security Act [42 U.S.C.A. § 401 et seq.]."

75.    On Sunday, March 21, 2010, in a 220 to 211 vote, the House of Representatives passed H. R. 4872, Reconciliation Act of 2010 (the "Reconciliation").

76.    Section 221, "Establishment and Administration of a Public Health Insurance Option as an Exchange-Qualified Health Benefits Plan," of the Reconciliation recommends changes to Title II of the Social Security Act. The Section specifically states, "The provisions of Medicare (and related provisions of Title II of the Social Security Act) relating to access of Medicare beneficiaries to Federal courts for the enforcement of rights under Medicare, including with respect to amounts in controversy, shall apply to the public health insurance option and individuals enrolled under such option under this title in the same manner as such provisions apply to Medicare and Medicare beneficiaries."

77.    Section 1232 of the Reconciliation, "Extended Months of Coverage of Immunosuppressive Drugs for Kidney Transplant Patients and Other Renal Dialysis Provisions," modifies the Social Security Act stating, "Section 226A(b)(2) of the Social Security Act (42 U.S.C. 426-1(b)(2)) is amended by inserting '(except for coverage of immunosuppressive drugs under section 1861(s)(2)(J))' before ', within the thirty-sixth month'."

78.    The Act, as to be implemented and enforced by Defendants has caused, and will continue to cause, the Plaintiffs to suffer undue and actual hardship and irreparable injury.

79.    Plaintiffs have no adequate remedy at law to correct the continuing deprivations of their most cherished constitutional liberties.

### COUNT I – THE ACT IS AN ULTRA VIRES ACT OF CONGRESS WHOLLY UNSUPPORTED BY ANY POWERS DELEGATED TO CONGRESS UNDER THE CONSTITUTION.

80.    Plaintiffs hereby reiterate and adopt each and every allegation in the preceding paragraphs numbered 1 through 79.

81.    The Act violates the United States Constitution insofar as it mandates that Plaintiffs and other individuals and employers participate in interstate commerce by purchasing health insurance coverage for themselves and/or their employees without regard for financial, economic, social, religious and cultural considerations which affect the individuals and employers' particular decisions.

82.    The Act, including the individual mandate and employer mandate, is not authorized under the powers delegated to Congress under the Commerce Clause, Article I, Section 8, clause 3 of the Constitution in that it is not regulating interstate commerce but requiring that individuals purchase a good or a service.

83.    Plaintiffs' and other individuals' and employers' decisions to not purchase health

Complaint for Declaratory, Preliminary and Permanent Injunctive Relief - Page 17

insurance is a decision not to engage in interstate commerce, *i.e.,* economic inactivity, not economic activity regulated by the Commerce Clause.

84.     Requiring Plaitniffs and other citizens to engage in commercial activity (i.e. the purchasing of health insurance) constitutes involuntary commercial activity, and therefore is beyond the scope of Congress's authority under the Commerce Clause, which reaches only voluntary interstate commercial activity.

85.     The noneconomic inactivity of citizens declining to purchase health insurance does not result in substantial direct economic effects sufficient to warrant Congressional action under the Commerce Clause. Any effects upon commerce resulting from a decision not to purchase health insurance is at best indirect, insubstantial, and local.

86.     The individual mandate in the Act is not authorized under the powers delegated to Congress under the General Welfare Clause, which only grants spending power to Congress and does not grant Congress power to regulate private choices not to spend.

87.     The individual mandate in the Act is not authorized by the Taxing and Spending Clause, Article I, Section 8, clause 1 of the Constitution, which only grants Congress the power to impose taxes upon certain purchases, not to impose taxes upon citizens who choose not to purchase something such as health insurance.

88.     Furthermore, the individual mandate in the Act is not authorized under the Taxing and Spending Clause because Congress is required to impose any tax equally and not disproportionately, as is the case with the individual mandate.

89.     The individual mandate in the Act is not authorized by the powers granted to Congress in the Sixteenth Amendment to the Constitution to tax income in that the Act imposes taxes upon individuals who fail to purchase health insurance regardless of whether they produce any income.

90.    The individual and employer mandate and its attendant burdensome regulations will directly and negatively affect the doctor-patient relationship, increase the cost of care, decrease the quality of care, and drive many healthcare workers from providing care.

91.    The individual and employer mandate will directly and negatively affect Plantiff Liberty University by increasing the cost of providing health insurance coverage and thus directly affect the ability of the University to carry on its mission.

92.    The mandates will interfere with the sovereignty of state and local governments, will increase the cost of providing Medicare coverage, and will thus negatively affect the budgets and operations of state and local governments.

WHEREFORE, Plaintiffs respectfully pray that the Court grant the declaratory and injunctive relief set forth herein and award such other relief to Plaintiffs as is reasonable, just and necessary.

## COUNT II -- VIOLATION OF THE TENTH AMENDMENT

93.    Plaintiffs hereby reiterate and adopt each and every allegation in the preceding paragraphs numbered 1 through 92.

94.    The Act and, in particular, the individual and employer mandates violate the Tenth Amendment to the United States Constitution.

95.    The Tenth Amendment of the Constitution provides that any powers not specifically granted to Congress are reserved to the states or the people.

96.    The Supreme Court has held that the power granted to Congress under the Commerce Clause includes the power to regulate the insurance industry at the federal level.

97.    However, the health insurance business, and, in particular, individuals' and employers' decisions regarding whether and what kind of health insurance to purchase is a wholly intrastate

activity beyond the scope of the powers granted to Congress under the Commerce Clause. As such, they are specifically reserved to the people and the states.

98.    Plaintiffs Liberty University, Martha A. Neal, Michele G. Waddell, Mary T. Bendorf, Pausanias Alexander, Joanne V. Merrill and Jeff Helgeson have exercised their individual rights reserved under the Tenth Amendement to decide whether and what type of health insurance they will purchase.

99.    The individual and employer mandates in the Act violate the rights reserved to Plaintiffs under the Tenth Amendment in mandating that individuals and employers purchase health insurance coverage in an amount and type prescribed by the federal government or face penalities in the form of increased taxes.

100.    Plaintiff Delegate Kathy Byron has exercised her rights under the Tenth Amendment, as an elected representative of the people of the Commonwealth of Virginia, to affirm and preserve the rights of its citizens to decide whether and what type of health insurance they will purchase.

101.    The Act violates the rights of state legislators like Plaintiff Delegate Kathy Byron by mandating that residents of the Commonwealth of Virginia purchase health insurance in an amount and type prescribed by the federal government in contravention of state laws that specifically prohibit such mandates against citizens of the Commonwealth.

102.    The Act as to be implemented and enforced by Defendants has caused, and will continue to cause, Plaitniffs to suffer undue and actual hardship and irreparable injury. Plaintiffs have no adequate remedy at law to correct the continuing deprivations of their most cherished constitutional liberties.

    WHEREFORE, Plaintiffs respectfully pray that the Court grant the declaratory and injunctive relief set forth herein and award such other relief to the Plaintiffs as is reasonable and

just.

### COUNT III -- VIOLATION OF THE ESTABLISHMENT CLAUSE UNDER
### THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

103.    Plaintiffs hereby incorporate and adopt each and every allegation in the preceding paragraphs numbered 1 through 102.

104.    The First Amendment's Establishment Clause prohibits the establishment of any national religion or excessive government entanglement with religion.

105.    The Act's religious exemption violates the Establishment Clause in that it grants to Defendants discretion to determine which religion is "recognized" and demonstrates a preference for one denomination over another.

106.    The Act's religious exemption is a *per se* violation of the Establishment Clause in that it vests in Defendants the right to determine what is a recognized religious sect entitled to exemption under the Act, and thereby discriminates between and among religions by preferring a "recognized" religion over one deemed not recognized.

107.    The Act's religious exemption has no secular purpose.

108.    The Act's religious exemption has the primary effect of advancing only recognized religions and of inhibiting Plaintiffs Liberty University, Martha A. Neal, Michele G. Waddell, Mary T. Bendorf, Pausanias Alexander, Joanne V. Merrill and Jeff Helgeson's religious beliefs.

109.    The Act's religious exemption excessively entangles the government with religion by requiring the government to make doctrinal decisions concerning what is a "recognized" religion.

110.    The Act's religious exemption violates the Establishment Clause by vesting in Defendants the power to determine what is orthodox in religion and by distinguishing between

and favoring certain religions

111.   The Act's limitation of religious exemptions to only members of certain recognized religious sects  constitutes hostility toward Plaintiffs' religious beliefs.

112.   The Act's exemption for healthcare sharing ministries violates Plaintiff Liberty University's rights under the Establishment Clause, in that it discriminates against Liberty University's religious beliefs by implementing an arbitrary date of December 31, 1999 for participation in a healthcare sharing plan and thereby prohibiting Liberty University and its employees from partaking in becoming or forming a healthcare sharing plan that would exempt them from the mandates under the Act.

113.   Defendants, in violation of the Establishment Clause, have caused, and will continue to cause, Plaintiffs to suffer undue and actual hardship and irreparable injury. Plaintiffs have no adequate remedy at law to correct the continuing deprivations of their most cherished constitutional liberties.

WHEREFORE, Plaintiffs respectfully pray that the Court grant the declaratory and injunctive relief set forth herein and award such other relief to Plaintiffs as is reasonable, just and necessary.

### COUNT IV -- VIOLATION OF THE RIGHT TO FREE EXERCISE OF RELIGION UNDER THE UNITED STATES CONSTITUTION

114.   Plaintiffs hereby reiterate and adopt each and every allegation in the preceding paragraphs numbered 1 through 113.

115.   The Act violates Plaintiffs' rights to free exercise of religion, as guaranteed by the First Amendment to the United States Constitution.

116.   Plaintiffs Liberty University, Martha A. Neal, Michele G. Waddell, Mary T. Bendorf, Pausanias Alexander, Joanne V. Merrill and Jeff Helgeson's religious beliefs are sincerely and

deeply held.

117.    The Act substantially burdens Plaintiffs' sincerely-held religious beliefs.

118.    There is no compelling government interest sufficient to justify individual mandate and employer insurance coverage mandates, punitive penalties and religious exemptions of the Act.

119.    The Act's provisions are not the least restrictive means to accomplish any permissible government purpose sought to be served.

120.    The Act's insurance mandates and punitive penalties are not narrowly tailored restrictions on Plaintiffs' free exercise of religion, as guaranteed by the First Amendment to the United States Constitution.

121.    The Act does not accommodate Plaintiffs' sincerely held religious beliefs.

122.    The Act targets Plaintiffs' religious beliefs and is therefore not neutral or generally applicable.

123.    The Act establishes a system of individualized exemptions but Plaintiffs' religious beliefs are not subject to an exemption.

124.    The Act establishes categories of exemptions that do not provide exemptions for Plaintiffs' sincerely held religious beliefs.

125.    The Act's Private Exchange Provisions create a system whereby, in order to meet the mandate to obtain private health insurance through the exchanges administered by the OPM, Plaintiffs either have to help pay for elective abortions, select an insurance plan that does not meet their needs or pay a punitive penalty. In short, Plaintiffs must choose between forced purchase or payment of a subsidy by fines, fees or taxes of a private insurance product that does not meet their needs, engaging in sinful behavior, or paying a punitive penalty for refusing to compromise their religious beliefs.

Complaint for Declaratory, Preliminary and Permanent Injunctive Relief - Page 23

126.    The Act's Private Exchange Provisions create a system whereby, in order to meet the mandate to obtain private health insurance through the exchanges administered by the OPM, Plaintiffs either have to formally associate privately with others who are complicit in elective abortion, select an insurance plan that does not meet their needs, or pay a penalty. In short, Plaintiffs must choose between forced purchase of a private insurance product that does not meet their needs or formally and privately yoke themselves with individuals they believe are sinners.

127.    The Act's Private Exchange Provisions exceed Defendants' authority to require taxpayers to pay taxes that support government services that taxpayers consider sinful: it effectively mandates that its citizens themselves engage in private transactions that they regard as sinful.

128.    This federal government-sanctioned and mandated forced choice between individual needs and holding to sincerely held religious beliefs is a substantial burden on the sincerely held religious beliefs of Plaintiffs.

129.    There is no compelling government interest sufficient to justify such provisions of The Act's Private Exchange Provisions.

130.    Such provisions of the Act are not the least restrictive means to accomplish any permissible government purpose sought to be served by The Act's Private Exchange Provisions.

131.    The Act's Private Exchange Provisions are not narrowly tailored restrictions on the free exercise of religion.

132.    The Act's Private Exchange Provisions do not accommodate Plaintiffs' sincerely held religious beliefs.

133.    The Act's violation of Plaintiffs' rights of free exercise of religion has caused, and will continue to cause, Plaintiffs to suffer undue and actual hardship and irreparable injury.

134.    Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

WHEREFORE, Plaintiffs respectfully pray that the Court grant the declaratory and injunctive relief set forth herein and award such other relief to Plaintiffs as is reasonable, just and necessary.

## COUNT V -- VIOLATION OF THE RELIGIOUS FREEDOM RESTORATION ACT

135.    Plaintiffs reallege paragraphs 1 through 134, and incorporate them herein.

136.    The Act substantially burdens Plaintiffs Michele G. Waddell, Mary T. Bendorf and Joanne V. Merrill's free exercise of religion in requiring that they either take part in funding abortions or accept only a prescribed healthcare plan that may not provide the services they require, or pay a penalty for failing to obtain such insurance.

137.    The Act does not further a compelling governmental interest and is not the least restrictive means of furthering a compelling governmental interest.

138.    The Act violates 42 U.S.C. § 2000bb, *et seg.*, the "Religious Freedom Restoration Act." The Act's violation of Plaintiffs' rights under the Religious Freedom Restration Act has caused, and will continue to cause, Plaintiffs to suffer undue and actual hardship and irreparable injury.

139.    Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished rights.

WHEREFORE, Plaintiffs respectfully pray that the Court grant the declaratory and injunctive relief set forth hereinafter.

## COUNT VI – VIOLATION OF EQUAL PROTECTION UNDER THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION

140.    Plaintiffs hereby incorporate and adopt each and every allegation in the preceding paragraphs numbered 1 through 139.

141.    Plaintiffs' right to equal protection under the laws is protected by the Fifth Amendment to the United States Constitution.

142.    The Act differentiates between similarly situated religions and therefore violates the guarantee of equal protection.

143.    The Act is an unconstitutional abridgement of Plaintiffs Liberty University, Martha A. Neal, Michele G. Waddell, Mary T. Bendorf, Pausanias Alexander, Joanne V. Merrill and Jeff Helgeson's affirmative rights to equal protection of the laws and is not facially neutral, but instead specifically targets Plaintiffs' religious viewpoints.

144.    The Act is an unconstitutional abridgement of Plaintiffs' right to equal protection of the law because Plaintiffs are treated differently from other similarly situated residents on the basis of religious beliefs.

145.    The Act is not supported by a compelling governmental interest sufficient to justify its enactment or enforcement against Plaintiffs.

146.    The Act is not the least restrictive means to accomplish any permissible government purpose sought to be served by its provisions.

147.    The Act does not serve a significant government interest.

148.    The Act is irrational and unreasonable and imposes irrational and unjustifiable restrictions on the exercise of constitutionally protected religious beliefs.

149.    Defendants, in violation of the guarantee of equal protection, have caused, and will continue to cause, the Plaintiffs to suffer undue and actual hardship and irreparable injury. Plaintiffs have no adequate remedy at law to correct the continuing deprivations of their most cherished constitutional liberties.

WHEREFORE, Plaintiffs respectfully pray that the Court grant the declaratory and

injunctive relief set forth herein and award such other relief to Plaintiffs as is reasonable and just.

## COUNT VII -- VIOLATION OF PLAINTIFFS' FIRST AMENDMENT RIGHTS OF FREE SPEECH AND FREE ASSOCIATION

150.    Plaintiffs hereby incorporate and adopt each and every allegation in the preceding paragraphs numbered 1 through 149.

151.    The Act's Private Exchange Provisions create a system whereby, in order to meet the mandate to obtain private health insurance through the exchanges administered by the OPM, Plaintiffs either have to formally associate privately with others who are complicit in elective abortion, select an insurance plan that does not meet their needs, or pay a punitive penalty.

152.    The Act, including the Act's Private Exchange Provisions, compels Plaintiffs to choose between forced purchase of a private insurance product that does not meet their needs, to formally and privately associate themselves with persons with whom they strongly do not want to associate or pay a punitive penalty.

153.    This federal government-sanctioned and mandated forced choice between individual rights to freely associate with others with whom they agree and not associate with those with whom they do not agree violates Plaintiffs Liberty University, Michele G. Waddell, Mary T. Bendorf, and Joanne V. Merrill's rights of free association guaranteed by the First Amendment to the United States Constitution.

154.    The Act imposes fines, fees and taxes on individuals and employers that are paid in part to subsidize insurance programs that fund abortion in direct violation of Plaintiffs' conscience, moral beliefs and religious conviction, thus forcing them to subsidize and associate with people and private companies or insurance providers that fund abortion. This forced association and compelled speech is repugnant to Plaintiffs and violates their rights under the First Amendment.

155.    Defendants' violation of Plaintiffs' rights of free speech and association has caused, and will continue to cause, Plaintiffs to suffer undue and actual hardship and irreparable injury.

156.    Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

WHEREFORE, Plaintiffs respectfully pray that this Court will grant the declaratory and injunctive relief, as well as damages, set forth herein.

## COUNT VIII – THE ACT VIOLATES THE CONSTITUTIONAL PROHIBITION ON UNAPPORTIONED CAPITATION OR DIRECT TAX

157.    Plaintiffs hereby reiterate and adopt each and every allegation in the preceding paragraphs numbered 1 through 156.

158.    The Act violates the prohibition against unapportioned captitation or direct tax set forth in article I, sections 2 and 9 of the United States Constitution.

159.    The tax penalty on uninsured persons under the Act constitutes a capitation and a direct tax that is not apportioned among the states according to census data and is paid or directed to private third parties.

160.    Defendants have caused, and will continue to cause, Plaintiffs to suffer undue and actual hardship and irreparable injury.

161.    Plaintiffs have no adequate remedy at law to correct the continuing deprivations of their most cherished constitutional liberties.

WHEREFORE, Plaintiffs respectfully pray that the Court grant the declaratory and injunctive relief set forth herein and award such other relief to Plaintiffs as is reasonable and just.

## COUNT IX – CONGRESS'S PASSAGE OF THE RECONCILIATION ACT VIOLATED ESTABLISHED PROCEDURE

162.    Plaintiffs hereby reiterate and adopt each and every allegation in the preceding paragraphs numbered 1 through 161.

163.    Congress's consideration and adoption of the Reconciliation Act is barred by the Congressional Budget Act of 1974.

164.    Such Congressional actions are illegal and thus null and void (or at least are voidable upon Declaration of this Court).

165.    Consideration and adoption of the Reconciliation Act should not have been permitted over the objections and no votes of Congressional Representatives to the detriment of their constituents, including Plaintiffs.

166.    Defendants have caused, and will continue to cause, Plaintiffs to suffer undue and actual hardship and irreparable injury.

167.    Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional rights.

WHEREFORE, Plaintiffs respectfully pray that this Court will grant the declaratory and injunctive relief set forth herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

A.    That this Court immediately issue a Preliminary Injunction enjoining the Defendants, Defendants' officers, agents, employees and all other persons acting in concert with them, from acting in any manner to implement, enforce or otherwise act under the authority of the Act or the Reconciliation Act so as to infringe upon the Plaintiffs rights, so that:

1.      Plaintiffs will not be subject to federal laws regulating people concerning subject matters for which they or their forefathers have never ceded authority to the federal government to regulate;

2.      Plaintiffs will not be subject to federal laws concerning subject matters for which their state or commonwealth has never ceded authority to the federal government to regulate;

3.      Plaintiffs will not be subject to any federal law mandate to obtain or maintain individual health insurance coverage where their state or commonwealth has expressly protected them as its citizens from such regulation;

4.      Plaintiffs will not be subject to any federal employer or individual mandate to procure certain health insurance coverage;

5.      Plaintiffs will not be subject to any federal individual mandate to procure certain health insurance coverage that does not apply to members of certain recognized religions approved by the federal government;

6.      Plaintiffs will not be subject to any federal employer or individual mandate to procure health insurance coverage that precludes them from becoming, forming or joining a new "health sharing ministry" as defined by the Act and limited to those existing before 1999;

7.      Plaintiffs will not be forced to choose between their sincerely held religious beliefs about abortion and support of abortion and following a mandate of the federal government;

8.      Plaintiffs will not be forced to choose between exercising their rights to freely associate in private associations with those who share their convictions regarding support

Complaint for Declaratory, Preliminary and Permanent Injunctive Relief - Page 30

of abortion and following a mandate of the federal government; and

        9.     Plaintiffs will not be forced to suffer economic injury to their businesses, practices and personal livelihood through the overreaching comprehensive federal laws contained in the Act and the Reconciliation Act.

        B.     That this Court issue a Permanent Injunction enjoining the Defendants, Defendants' officers, agents, employees and all other persons acting in concert with them, from acting in any manner to implement, enforce or otherwise act under the authority of the Act or the Reconciliation Act so as to infringe upon the Plaintiffs rights, so that:

        1.     Plaintiffs will not be subject to federal laws regulating people concerning subject matters for which they or their forefathers have never ceded authority to the federal government to regulate;

        2.     Plaintiffs will not be subject to federal laws concerning subject matters for which their state or commonwealth has never ceded authority to the federal government to regulate;

        3.     Plaintiffs will not be subject to any federal law mandate to obtain or maintain individual health insurance coverage where their state or commonwealth has expressly protected them as its citizens from such regulation;

        4.     Plaintiffs will not be subject to any federal employer or individual mandate to procure certain health insurance coverage;

        5.     Plaintiffs will not be subject to any federal individual mandate to procure certain health insurance coverage that does not apply to members of certain recognized religions approved by the federal government;

        6.     Plaintiffs will not be subject to any federal employer or individual

mandate to procure health insurance coverage that precludes them from becoming, forming or joining a new "health sharing ministry" as defined by the Act and limited to those existing before 1999;

       7.     Plaintiffs will not be forced to choose between their sincerely held religious beliefs about abortion and support of abortion and following a mandate of the federal government;

       8.     Plaintiffs will not be forced to choose between exercising their rights to freely associate in private associations with those who share their convictions regarding support of abortion and following a mandate of the federal government; and

       9.     Plaintiffs will not be forced to suffer economic injury to their businesses, practices and personal livelihood through the overreaching comprehensive federal laws contained in the Act and the Reconciliation Act.

       C.     That this Court render a Declaratory Judgment declaring the Act and the Reconciliation Act null and void, and declaring the Act and the Reconciliation Act unconstitutional as a violation of Article I to the United States Constitution and the First, Fifth, and Tenth Amendments of the United States Constitution, as well as the Religious Freedom Restoration Act, the Congressional Budget Act of 1974, and Section 38.2-3430.1:1 of the Code of Virginia;

       D.     That this Court award Plaintiffs their reasonable costs;

       E.     That this Court adjudge, decree, and declare the rights and other legal relations with the subject matter here in controversy, in order that such declaration shall have the force and effect of final judgment;

       F.     That this Court retain jurisdiction of this matter for the purpose of enforcing this

Complaint for Declaratory, Preliminary and Permanent Injunctive Relief - Page 32

Court's order;

G.    That this Court take such other actions as are necessary and proper to remedy Plaintiff's injuries; and

H.    That this Court grant such other and further relief as this Court deems equitable and just under the circumstances.

Dated this 23rd day of March, 2010.

Respectfully Submitted,

Mathew D. Staver*
Anita L. Staver*
Liberty Counsel
1055 Maitland Center Commons
Second Floor
Maitland, FL 32751
(800)671-1776 Telephone
(407) 875-0770 Facsimile
court@lc.org Email
Attorneys for Plaintiffs
*Motions for pro hac vice pending

/s/ Mary E. McAlister
Mary E. McAlister, Va Bar #76057
Liberty Counsel
P.O. Box 11108
Lynchburg, VA 24506
(434) 592-7000 Telephone
(434) 592-7700 Facsimile
court@lc.org Email
Attorney for Plaintiffs

William E. McRorie, Va Bar #07541
717 Court Street
Lynchburg, VA 24504
(434) 592-7000 Telephone
(434) 592-7700
wemcrorie@liberty.edu Email

Complaint for Declaratory, Preliminary and Permanent Injunctive Relief - Page 33